# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL D. MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-196-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Michael D. Morgan requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 27, 1969, and was forty-five years old at the time of the administrative hearing (Tr. 170, 172). He has at least an eighth grade education,[3] vocational training in computer repair and graphic design, and has worked as a graphic designer (Tr. 49, 67). The claimant alleges he has been unable to work since an amended onset date of October 31, 2012, due to bipolar disorder, depression, high blood pressure, diabetes, sleep disorder, neck and back injuries, a learning disability, high cholesterol, and numbness in his feet and hands (Tr. 37, 192, 239).

## Procedural History

On October 16, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and on October 19, 2012, he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 170-77). His applications were denied. ALJ James Bentley held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 9, 2014 (Tr. 13-26). The Appeals Council denied

---

[3] The claimant testified at the administrative hearing that the highest grade he completed in school was eighth grade, but reported on his Disability Reports that he completed twelfth grade (Tr. 49, 193, 240).

review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with frequent, but not constant, handling and fingering with the right upper extremity, and a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every half-hour without leaving the workstation so as to not diminish pace or production (Tr. 17). He further imposed the psychologically-based limitations that the claimant could perform simple, repetitive tasks with routine supervision, and could have occasional contact with co-workers and supervisors, but no work-related contact with the general public (Tr. 17). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, document preparer, clerical mailer, and touch-up screener (Tr. 25).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for his moderate difficulty in maintaining concentration, persistence, or pace; and (ii) evaluate the opinion of counselor Rachel Hattensty. The Court agrees with the claimant's second contention, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of back pain, right hand neuropathy, diabetes, hypertension, obesity, anxiety, mood disorder, bipolar disorder, personality disorder, substance abuse by history, and depression (Tr. 15). The medical evidence related to the claimant's mental impairments reveals that his treatment largely consisted of medication management from varying providers at the Choctaw Nation Medical Center ("CNMC") (Tr. 354-98, 458-84, 533-630, 683-714, 758-61, 772-858). His mental health treatment at CNMC dates back as far as May 2007, and his diagnoses included panic disorder, anxiety, depression, bipolar disorder, and personality disorder not otherwise specified (Tr. 394-98, 483, 535). In addition, the claimant was treated in October 2012, December 2013, and February 2014 for suicide attempts, but did not require inpatient treatment (Tr. 495, 501-03, 644, 656-57, 663-64, 675).

Nurse Practitioner Karen Taylor consistently treated the claimant between April 2012 and October 2014 (Tr. 465-74, 533-35, 550-53, 570-72, 584-88, 772-91). On April 10, 2012, Ms. Taylor noted the claimant had loud and slightly pressured speech; an animated, euthymic, and anxious affect; goal-directed and relevant thought processes; intact memory; poor insight and judgment; and fair impulse control (Tr. 473). She also noted the claimant obsessed about being overmedicated while he was incarcerated (Tr. 473). Ms. Taylor provisionally diagnosed the claimant with bipolar disorder not otherwise specified and anxiety not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of sixty (Tr. 473). At a follow-up appointment on July 17, 2012, Ms. Taylor noted the claimant's attention/concentration seemed impaired and she assigned a GAF score of fifty-six (Tr. 466). By March 2013,

the claimant reported his mood stabilized once his brother moved out of the family home (Tr. 552). Ms. Taylor assigned a GAF score of sixty (Tr. 552). At an appointment the following month, the claimant reported a depressed mood and stated his prescribed anti-depressant medications had never effectively treated his depression (Tr. 533). In a letter dated July 21, 2014, Ms. Taylor stated she had treated the claimant for many years and that his prescribed psychotropic medications could potentially cause some central nervous system depression and could impair concentration/focus (Tr. 763).

The claimant established care with counselor Rachel Lee Hattensty on January 8, 2013 (Tr. 573). At this initial appointment, Ms. Hattensty noted the claimant had a bright affect and was cooperative but somewhat labile (Tr. 573). The claimant reported increasing problems due to family conflict within his home, and Ms. Hattensty encouraged him to identify ways to improve self-care (Tr. 573). At a follow-up appointment on April 9, 2013, Ms. Hattensty noted the claimant appeared "bright and comfortable, similar to past visits," diagnosed him with mood disorder not otherwise specified and cluster b traits, and assigned a GAF score of sixty (Tr. 628-30). In a letter dated July 31, 2014, Ms. Hattensty indicated the claimant's diagnoses included mood disorder and generalized anxiety disorder, both of which affected him daily (Tr. 762). She opined that the claimant could not do work with the public or with moderate to high stress, and could not cope with co-workers (Tr. 762).

Dr. Kathleen Ward performed two consultative mental status examinations of the claimant (Tr. 399-402, 504-10). At the September 2010 examination, Dr. Ward noted the claimant was somewhat effusive and dramatic in presentation, seemed to exaggerate

symptoms to at least some degree, and seemed to search for the right answer to questions, rather than respond candidly (Tr. 400-01). She indicated his thought processes were logical and organized; he had no bizarre thought content or delusions; he was oriented to time, date, and place; his intellectual abilities were estimated to be within the average range; and he had no significant deficits in social judgment and problem solving (Tr. 401). Dr. Ward's impression was that the claimant was a questionable historian, and while she was certain he had some mental health concerns, and likely had some difficulty adjusting to his medications, she was unable to accurately assess his level of disability (Tr. 401-02). Similarly, at a December 2012 consultative examination, Dr. Ward noted the claimant appeared to be a marginally reliable historian, but indicated that mood disorder, substance use issues, and personality disorders were suggested in discussion and demeanor (Tr. 506).

State agency psychologist Janice B. Smith reviewed the record and completed a Mental Residual Functional Capacity Assessment ("MRFC") on October 4, 2010 (Tr. 404-06). She found that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public, but was otherwise not significantly limited (Tr. 404-05). She concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 406).

At the administrative hearing, the claimant testified that his bipolar disorder was the most significant limitation that prevented him from working (Tr. 50). He testified

that because of it, he cannot get along with anybody, gets nervous and anxious around other people, and his mind wanders (Tr. 50). He then stated the next most significant issue was his medication, which makes him tired and unable to function (Tr. 51). He stated that he would fall asleep if he were working and took all of his medication (Tr. 61). As to his memory, the claimant testified that he is forgetful, and makes lists and sets reminders for everything he does, including grocery shopping and taking medication (Tr. 61). He indicated that his hallucinations and anger issues improved recently due to a change in medication (Tr. 46, 63).

In his written opinion, the ALJ summarized the claimant's testimony, the medical records, and the third party function reports. In discussing the opinion evidence, the ALJ noted Ms. Hattensty was not an acceptable medical source, and gave little weight to her opinion that the claimant was unable to work in "moderate to high stress," finding such limitation was vague because it did not describe the specific source of stress such as task complexity or production pace (Tr. 23). As to the claimant's social difficulties, the ALJ concluded that the claimant could control his behavior, but occasionally experienced aggravated irritability when triggered by a specific, acute stressor (Tr. 23). Therefore, he afforded some weight to Ms. Hattensty's opinion that the claimant could not work with the public since it limited the risk of a trigger, but little weight to her opinion that he could not work with co-workers since the claimant would be familiar with his co-workers due to regular interaction (Tr. 23). The ALJ then gave significant weight to the state agency psychologist's opinion, but further limited the claimant to simple, repetitive tasks with routine supervision in light of the claimant's allegations of difficulty with memory

and concentration, and to occasional interaction with co-workers and supervisors in light of his allegations of social difficulty, but cooperative and appropriate behavior at appointments (Tr. 23). The ALJ seemed to adopt Dr. Ward's opinion as to the claimant's reliability, but did not assign her opinion any specific weight (Tr. 20).

Social Security regulations provide for the proper consideration of "other source" opinions such as the one provided by Ms. Hattensty. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 404.1527(c), 416.927(c). The ALJ noted at the outset of step four that he considered the opinion evidence in accordance with SSR 06-03p, but made no reference to these factors in connection with Ms. Hattensty's MSS, and it is therefore unclear

whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). This analysis was particularly important because Ms. Hattensty was the claimant's treating counselor for more than a year prior to issuing her MSS, and her opinion is the only one in the record from a treating provider, albeit a treating "other source" provider. Furthermore, there is nothing in the record to support a finding that "familiarity" with co-workers would overcome the claimant's difficulty in coping with them, and the ALJ's assumption that it would is not supported by the record, suggesting an improper approach to assessing the evidence.

Because the ALJ failed to properly consider Ms. Hattensty's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**